**Joseph McGEE, Plaintiff,**

v.

**The GRAND RAPIDS PRESS, a Michigan Business, and Grand Rapids Typographical Union, No. 39, Defendants.**

**No. G75–425 CA 1.**

United States District Court, W. D. Michigan, S. D.

March 5, 1980.

Benjamin H. Logan, II, Grand Rapids, Mich., for plaintiff.

Gordon J. Quist, A. Robert Kleiner, Grand Rapids, Mich., for defendants.

## OPINION

DOUGLAS W. HILLMAN, District Judge.

This is an action by a discharged employee of the Grand Rapids Press alleging racial discrimination in lay off in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §§ 1981 and 1983 of the Civil Rights Act of 1871, and the fifth and fourteenth amendments to the United States Constitution. The plaintiff also complains of race based discrimination in refusal to admit him to the union, failure to hire, and failure to promote.

The matter is presently before the court on defendant's motion for summary judgment. Plaintiff relies substantially on the fact that he was the only black printer employed by the Grand Rapids Press and therefore was entitled to be retained by the Press regardless of contractual lay off policies, because of a duty of the Press to maintain affirmative action in hiring persons of his minority race. The court has reviewed the pleadings, including affidavits and depositions and on Monday, January 14, 1980, heard oral argument on the defendant's Motion for Summary Judgment.

The plaintiff is a black male who had been employed as a printer by the Grand Rapids Press from November of 1966 through March of 1975 when his employment there was terminated. The plaintiff alleges that the Grand Rapids Press discriminated against him in the terms and conditions of his employment by excluding him from the Press's apprenticeship program for printers back in the late 1950's and early 1960's, by denying him promotion based on his race, by not affording him the same opportunities for training that were offered to similarly situate white persons also employed as printers in the Press and finally, by laying him off out of seniority and at the time of his lay off by failing to give him an opportunity to demonstrate that he was capable of performing the work being performed by white printers with less seniority.

The plaintiff further alleges that in July of 1965 he applied for and was denied admission to the Grand Rapids Typographical Union. At the time of that application the plaintiff had satisfied approximately 5½ of the established six years apprenticeship requirement for membership in the Union. The plaintiff alleges that the refusal on the part of the union to waive the six year requirement for the plaintiff was due to racial discrimination.

The Press employed printers in three (3) classifications: machinists, operators and floormen. The plaintiff worked in the floorman classification during the entire term of his employment with the Press.

In 1972 the Press began the process of changing from a "hot metal" printing process to a photo composite or "cold type" printing process. In the course of that change-over the Press reduced its printers from 186 in March of 1972 to 71 in June of 1975. The plaintiff was terminated from his employment with the Press in the process of that change-over. The plaintiff does not allege that this change-over was a "pretext" on the part of the Press to accomplish a racially discriminatory discharge of the plaintiff.

Pursuant to a collective bargaining agreement effective April 1, 1974, lay offs necessitated by the change in printing method were to be made in the order of seniority within the job classification in which there was not sufficient work to maintain the existing numbers of employees.[1] Printers also had the option of volun-

---

1. The collective bargaining contract entered into by the parties and to be effective April 1, 1974, is attached to defendant's Affidavit of George VanderLaan in support of their Motion for Summary Judgment as Exhibit # 3. Subsection 6–04 of the contract provides:

"The foreman shall have the right to decrease the force. When it becomes necessary to decrease the force in an office where departments are not recognized it shall be determined upon what class of work the reduction is required. *The journeyman with lowest priority standing in the office engaged upon the class of work indicated shall be discharged first*: Provided, the journeyman to be discharged may claim any other work in the

tarily terminating their employment with the Press and accepting $14,000 as severance pay.[2] When an employee's name came up for lay off each employee, including the plaintiff, had the option of accepting lay off and waiting for reinstatement according to his accumulated seniority or electing termination and accepting the lump sum severance pay. The plaintiff admits that he accepted the lump sum of $14,000 as termination pay on March 12, 1975.

The collective bargaining agreement had also been amended earlier in January of 1973 to accommodate the process of change-over in printing method for the printers. The contract provided that each printer would be afforded an opportunity to train in some aspect of the new "cold type" printing process.[3] According to the plaintiff's deposition he was trained in paste up and camera, two aspects of the new method.

The plaintiff alleges in response to the defendant's Motion for Summary Judgment that he was never afforded an opportunity to train on the Mergenthaller. The Mergenthaller is commonly referred to as a "505" and is a machine essential to the cold type print process. Three white printers with less seniority than the plaintiff had been retained by the Press after the plaintiff's lay off. Each of these white printers had been trained by the Press on the 505. Their job was to run the 505. Plaintiff's allegation that he was not offered an opportunity to train on the 505 is contradicted by his testimony in his deposition of September 17, 1976. The admissions of the plaintiff show that he was offered an opportunity to train on the 505 and declined that offer. The plaintiff indicated in his deposition at page 65 that he was unable to accept the opportunity offered by the Press to train on the 505 because he was working at the Press and attending Grand Valley State Colleges at that time. Plaintiff's counsel argued at oral argument that the plaintiff should have been provided a special training to prevent his lay off and enable him to "bump" one of the white printers who had less seniority than the plaintiff. This argument is based on the contention that the Press had an underlying affirmative obligation to the plaintiff to make every effort to maintain his employment, as part of its duty to implement affirmative action for hiring of members of the plaintiff's minority race. The plaintiff cites no authority in support of this proposition. The court cannot agree that the plaintiff had a special right which entitled him to special training. He was entitled to be treated in the terms and conditions of his employment the same

office he is competent to do which is being performed by a journeyman with lower priority standing: Provided further, a journeyman claiming other work to avoid discharge to reduce the force shall not be exempt from discharge if incompetent. Should there be an increase in the force, the employees laid off shall be reinstated in the reverse classification order to which they were laid off before other help may be employed."
(emphasis added)

2. This provision is included in a "Memorandum of Agreement between the Grand Rapids Press and the Grand Rapids Typographical Union No. 39," dated May 24, 1974, in subsection F.2. This agreement is attached to defendant's affidavit of George Vander Laan as part of Exhibit # 3.

3. This provision appears in the Amended Agreement between the Grand Rapids Press and the Grand Rapids Typographical Union, Local 39, effective January 1, 1973, amending the collective bargaining agreement of April 1, 1974. That agreement is attached to defend-

ant's Affidavit of George Vander Laan as Exhibit # 5. It provides in subsection 4:

"It is agreed by both Parties that all employees covered by the present Newspaper Agreement at the signing of this Amendment shall be trained in a phase of the cold type process in accordance with SS 2–06."

The same agreement is incorporated in subsection 2–06 of the collective bargaining agreement effective April, 1974, attached to the same affidavit as Exhibit # 3. That subsection, under "New Process" provides:

"The Company shall notify the Union not less than 180 days prior to the installation of any method or major change of methods of producing work covered in this agreement which requires retraining. Upon the installation of such methods, the Company agrees to provide ample opportunity to journeymen and apprentices to become proficient on adequate equipment, and the Union agrees to supply partially trained journeymen and apprentices for these purposes."

as similarly situated white employees, without regard to his race.

The plaintiff alleges in response to the defendant's Motion for Summary Judgment that a genuine issue of fact remains as to whether the plaintiff's skills were comparable to the white employees with less seniority who were retained after plaintiff's discharge. If the plaintiff were able to show that he was capable of performing the work of printers with less seniority, that would be material to his claim of discrimination. Under the contract effective April 1, 1974, Section 6–04 entitled Decrease and Increase Force, provides: "a journeyman who is to be discharged may claim any other work in the office he is competent to do which is being performed by a journeyman with lower priority standing."[4] At page 65 of the plaintiff's deposition he admits that he did not have the skills to operate the 505 and that the three white printers retained after his discharge all were operating the 505. The court can only conclude based on these statements of the plaintiff that there is not a genuine controversy as to the facts admitted by the plaintiff. Both parties agree that: 1) the plaintiff was provided an opportunity to train on the 505; 2) that the plaintiff did not avail himself of that opportunity; 3) that three white printers with less seniority than the plaintiff were retained by the Press after the date of plaintiff's lay off; and 4) that the plaintiff did not possess the skills to "bump" any of these three white printers under the provisions of the contract. The plaintiff cannot rely on the mere allegation that these facts are in dispute for purposes of resisting a Motion for Summary Judgment. Rule 56, subsection (e) of the Federal Rules of Civil Procedure requires that the party resisting a Motion for Summary Judgment may not rest on mere allegations in his pleadings, but must in response to a Motion for Summary Judgment set forth by affidavit or deposition specific facts showing that there is a genuine issue for trial. The plaintiff has not sustained this burden and it appears from the admitted facts that he cannot sustain this burden of showing material facts over which there is a genuine controversy.

The plaintiff here has neither alleged nor shown state action in any of the employment related discrimination alleged in his complaint. State action is a necessary and essential element of a claim under the fifth and fourteenth amendments to the United States Constitution and under section 1983 of Title 42 of the U.S.Code. Consequently, the claims of the plaintiff which are brought under this section of the U.S. Code and these sections of the constitution must be dismissed for failure to state a claim upon which relief can be granted. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), *Shelly v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) and *Sheppard v. E. W. Scripps Co.*, 421 F.2d 555 (6th Cir. 1970), cert. den., 400 U.S. 941, 91 S.Ct. 238, 27 L.Ed.2d 245 (1971).

The claims of the plaintiff that the Press discriminated against him by excluding him from membership in its apprenticeship program must also be dismissed for failure to state a claim. The plaintiff is alleged to have been excluded from the Press's printers apprenticeship program in 1956, 1958 and 1963, at times before Title VII of the Civil Rights Act of 1964 was either enacted or in effect. Consequently, regardless of how unfortunate or invidious or blatantly race based that exclusion might have been, there is no remedy for the plaintiff. Any action against the Press for this exclusion from the apprenticeship program under 42 U.S.C. § 1981 is time barred by the three year statute of limitations. *EEOC v. Detroit Edison Co.*, 515 F.2d 301 (6th Cir. 1975).

Plaintiff's allegation of exclusion from the union in July of 1965 is similarly time barred under 42 U.S.C. § 1981. Under Title VII the plaintiff's claim against the union must be dismissed for lack of subject matter jurisdiction in this court. The plaintiff failed to file a charge with the EEOC

---

**4.** Subsection 6–04 is set forth above in footnote 1.

alleging race based discrimination in his exclusion from the Union. Under the statute, 42 U.S.C. § 2000e–5(e) the plaintiff had 180 days from the unlawful act within which to file a charge with the EEOC. This requirement is jurisdictional, *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Given that such a claim was never filed, this court is without subject matter jurisdiction of that claim.

The plaintiff, after his lay off filed a complaint with the EEOC and the Michigan Civil Rights Commission on March 10, 1975. That complaint alleges: "I was hired by the Grand Rapids Press in 1966. On March 9, 1975, I was laid off out of seniority. White employees with less seniority were not laid off. I was the only black employed by the Press when I was laid off, although an Affirmative Action Program was in effect at the time.

I am a black man. I believe that I was unfairly laid off because of my race."

Under Title VII a charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice. (42 U.S.C. § 2000e–5(e)) and before filing with the EEOC the charge must be filed with the appropriate state agency, in Michigan, the Michigan Civil Rights Commission. (42 U.S.C. § 2000e–5(c)). These filing requirements are jurisdictional, *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). They are incorporated as mandatory parts of the statutory process of seeking relief for discrimination in employment to serve a two-fold purpose. The employer is provided early notice of allegations of his unlawful employment practices and the EEOC is afforded an opportunity to conduct an independent investigation and to initiate conciliation efforts before the plaintiff resorts to litigation. In addition the statute requires that the plaintiff receive a right to sue letter from the EEOC before initiating a complaint in federal District Court. The plaintiff here has not attached a right to sue letter to his complaint, nor has he indicated in his pleadings that he has in fact received or requested one from the EEOC.

■ The charge filed with the Michigan Civil Rights Commission and the EEOC is limited to an allegation of race based discrimination in lay off in March of 1975. There is no inclusion of discrimination in hiring or in promotion. However bona fide the plaintiff's claims of discrimination in hiring and in promotion might be, this court is without jurisdiction to consider these claims under Title VII because the plaintiff has not filed timely complaints with the EEOC complaining of discrimination in either hiring or failure to promote. Similarly any claims against the union for unlawful employment practices in refusing plaintiff admission to the union in violation of Title VII are not properly before this Court because the plaintiff similarly failed to file timely complaints with the EEOC or MCRC setting forth those complaints. Only for the alleged discriminatory discharge in March of 1975, has the plaintiff filed a timely complaint with the federal and state agency. Because the plaintiff has not filed charges within 180 days after the other alleged unlawful employment practices, this court is without subject matter jurisdiction to consider those claims of the plaintiff of race based discrimination in past failure to hire, failure to promote or failure to admit to membership within the union under Title VII; and these claims are accordingly dismissed.

■ Here the employer, The Grand Rapids Press, has shown that the plaintiff was laid off in the course of a major lay off program that took place because of a business decision to change from "hot type" printing to "cold type printing". The plaintiff does not allege that that business decision was pretext for underlying race discrimination aimed against him. *McDonald Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff was laid off according to provisions of contracts that were entered into through collective bargaining and according to the application of a bona fide seniority system. This is not an unlawful employment practice under the provisions of Sec-

tion 703(h) of Title VII (42 U.S.C. § 2000e–2(h)). The defendant Press has introduced through the affidavit of George Vander Laan, the original contract of October, 1971, (attached as Exhibit # 2 to that affidavit) and the amendments to that contract effective January 8, 1973, (attached as Exhibit # 5 to that affidavit). The plaintiff does not dispute that these contracts were in fact entered into by the Press and the union. The court therefore concludes that no genuine controversy exists between the parties about what contract provisions govern the lay off process. Likewise from the pleadings, admissions of the plaintiff, the affidavits of the parties and the depositions it is apparent that no factual controversy exists about either the contract provisions governing the plaintiff's lay off or about the manner in which those contract provisions were applied in the plaintiff's discharge.

On March 9, 1975, the plaintiff was laid off by the Press because of lack of work within his classification. The plaintiff was the employee with the least seniority in the foremen classification of printers. Consequently, he was properly laid off under section 6–04 of the contract. Three printers with less accumulated seniority than the plaintiff remained as employees of the Press after plaintiff's lay off.[5] These employees were all engaged in work that the plaintiff, by his own admission, was not competent to perform. The plaintiff admits that he did not avail himself of an opportunity to be trained on the machine that each of these three mechanists were trained on and were operating. He was not equipped with the skill and training to do the job of the only employees with less seniority than he and so could not "bump" them under the terms of the contract. These facts are not in genuine dispute. Lay offs under a bona fide seniority program are clearly protected under Title VII, section 703(h), 42 U.S.C. § 2000e–2(h). Consequently, plaintiff's lay off under the seniority and lay off system established under the contract was not unlawful under Title VII. Similarly there is no genuine issue of fact as to any material element of a cause of action for wrongful discharge under 42 U.S.C. § 1981. The Court finds that as a matter of law the Grand Rapids Press is entitled to Summary Judgment under Rule 56, of the Federal Rules of Civil Procedure and Judgment shall enter accordingly.

IT IS SO ORDERED.

---

5. See defendant's affidavit of George Vander Laan and Grand Rapids Press Priority List February 3, 1975, attached to that affidavit as Exhibit # 6.