869 F.2d 1489
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eugene R. CEDAR, Plaintiff-Appellant,
v.
PREMIER INDUSTRIAL CORPORATION, Defendant-Appellee.
 No. 88-3340.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1989.
 
 Before KENNEDY, NATHANIEL R. JONES and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Eugene R. Cedar, appeals from the District Court's dismissal of this ADEA action against Premier Industrial Corporation alleging that age discrimination by Premier led to his demotion and constructive discharge. The District Court also refused to exercise pendent jurisdiction over plaintiff's pendent state law claims for intentional infliction of emotional distress and breach of the obligation to deal in good faith. Plaintiff complains that the District Court should not have dismissed the demotion claim as moot because, although Premier retroactively reinstated plaintiff after he objected to his demotion, Premier failed to reinstate him to an equivalent position. Plaintiff next claims that the District Court erred in concluding that his constructive discharge claim was outside the scope of his EEOC charge because his claim based upon discharge was "like or related to" his EEOC charge of discriminatory demotion. Finally, plaintiff asserts the District Court abused its discretion in refusing to retain jurisdiction over his pendent state-law claims. After closely scrutinizing plaintiff's assertions, we affirm the judgment of the District Court.
 
 
 2
 Cedar began working for Premier in 1981 as a sales agent in training. After a brief hiatus, he rejoined the company in January of 1982. In December 1983, he was promoted to District Manager-Employee (DME) for the company's western region. Cedar was named manager of the year in 1985.
 
 
 3
 Greg Bonaparte became Cedar's supervisor in January 1986. Relations between Cedar and Bonaparte deteriorated following a dispute over a pay increase. The size of Cedar's sales territory was reduced in spring 1986. In December 1986, Bonaparte reassigned Cedar from his DME position to a District Manager-Sales (DMS) slot. Mr. Bonaparte testified that a DMS differs from a DME in that a DME's position requires considerably more travelling than a DMS and a DME's entire compensation is based upon salary and bonus while a DMS works for a per diem plus commissions from sales.[1] According to Bonaparte, the move was made out of concern for the health of Cedar, who had suffered three heart attacks. Cedar viewed the action as retribution for accusations he had made during the earlier salary dispute.
 
 
 4
 On January 8, 1987, Cedar filed an EEOC charge alleging that he had been demoted due to his age and physical condition. Bonaparte retroactively reinstated Cedar as a DME in late January.
 
 
 5
 Cedar requested a medical leave of absence on February 1, 1987. At the same time, he took a vacation. Cedar never returned to Premier. While on vacation, he attended training in encyclopedia sales. On February 12, Cedar informed Premier that he was resigning. He then launched a new career as an encyclopedia salesman, and later obtained employment as a consultant to Western Molecular.
 
 
 6
 The EEOC investigated Cedar's January 8, 1987 charge between March 9, 1987 and July 24, 1987. Cedar never amended the charge to include a constructive discharge claim. He filed an action in the United States District Court on June 3, 1987, alleging Premier had demoted and discharged him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621, et seq. The complaint also included pendent state claims. The District Court granted summary judgment for Premier on the ADEA claims and declined to take jurisdiction over the pendent claims.
 
 
 7
 The doctrine of mootness is an aspect of Article III's case or controversy requirement. A case becomes moot when the issues involved are no longer "live" or the parties have no personal stake in the outcome. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980). In practical terms, a plaintiff's claim becomes moot when he receives the relief he seeks or when it is factually, but not necessarily legally, impossible to receive such relief. Liberles v. County of Cook, 709 F.2d 1122, 1127 (7th Cir.1983). In the employment discrimination context, a plaintiff's complaint of discriminatory discharge or demotion normally becomes moot when the plaintiff is restored to her job or reinstated to her former position. See, e.g., Campbell v. City of Allen Park, 829 F.2d 576, 580 (6th Cir.1987); EEOC v. American Fed'n of Gov't Employees (AFGE) Local 1617, 657 F.Supp. 742, 750 (W.D.Tex.1987); Hampton v. U.S. Steel Corp., 40 Fair Empl. Prac. Cas. (BNA) 1272, 1273 (N.D.Ind.1986).
 
 
 8
 Plaintiff argues that despite this caselaw, his claim has not become moot because he was reinstated to a "debased" DME position. While plaintiff concedes he regained the same job he held just prior to the December 1986 demotion, he contends that he actually sought reinstatement to the DME job as it existed in early 1986, before the size of his sales territory was reduced. We reject this argument for two reasons. First, plaintiff failed to point to evidence that the job to which plaintiff was reinstated was any less desirable than the one he held in early 1986. Plaintiff admitted that his job duties after reinstatement were identical to those in early December and that he suffered no loss of pay or benefits. In fact, after reinstatement Premier agreed to evaluate plaintiff based only upon his monthly post-reinstatement performance and to ignore plaintiff's poor sales figures for the eight months preceding his transfer. Second, plaintiff's EEOC charge complained only of a demotion on December 11, 1986, and sought reinstatement only to the job he held at that time. The charge was never amended to include an allegation that plaintiff's demotion really occurred at some earlier time. Since plaintiff's charge relates to the demotion which occurred on December 11 and that demotion was rescinded, any possible claim based upon that demotion is moot. Plaintiff may not complain about a December 11 demotion and then urge that proper reinstatement would be to place plaintiff in the exact position he held some ten months earlier.
 
 
 9
 The District Court concluded it was without jurisdiction over the constructive discharge claim, since the claim was not included in plaintiff's charge to the EEOC. After his resignation, plaintiff failed to amend the charge to include a claim of constructive discharge. Plaintiff asserts that his constructive discharge claim was improperly dismissed because it alleged facts sufficient to encompass such a claim without the need to explicitly state the legal term "constructive discharge."
 
 
 10
 The timely filing of an EEOC complaint is a jurisdictional prerequisite to the filing of a civil ADEA action. See Vinson v. Ford Motor Co., 806 F.2d 686, 688 (6th Cir.1986), cert. denied, 107 S.Ct. 2482 (1987) (citing Oscar Mayer & Co. v. Evans, 441 U.S. 750, 759 (1979)). But cf. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (EEOC filing not jurisdictional prerequisite in Title VII context but only procedural requirement). In addition, the EEOC spearheaded process serves to limit the scope of a subsequent judicial complaint. The rule in this circuit is that the judicial complaint is limited to the scope of the EEOC investigation "reasonably expected" as a result of the discrimination charge filed. See Farmer v. ARA Servs., Inc., 660 F.2d 1096, 1105 (6th Cir.1981). Plaintiff bears the burden of establishing jurisdiction if it is challenged.
 
 
 11
 In spite of this limitation, courts have liberally construed charges of discrimination in order to ensure that meritorious claims are not turned aside because of procedural technicalities. See, e.g., McBride v. Delta Air Lines, Inc., 551 F.2d 113, 115 (6th Cir.), vacated on other grounds, 434 U.S. 916 (1977); Danner v. Phillips Petroleum Co., 447 F.2d 159, 161-62 (5th Cir.1971). To this end, a court should focus not on the words of the EEOC charge in isolation but upon the likely scope of any EEOC investigation of the charges. See Tipler v. E.I. duPont deNemours and Co., 443 F.2d 125, 131 (6th Cir.1971) (wording of EEOC charge "need not 'presage with literary exactitude the judicial pleadings which may follow' ") (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir.1970)). See also Satz v. ITT Financial Corp., 619 F.2d 738, 741 (8th Cir.1980) (claims raised in civil complaint must be "like or related to" substance of EEOC charges).
 
 
 12
 The purpose of the EEOC filing requirement is to initiate the EEOC's investigatory and conciliatory procedures. Only upon the failure of conciliative efforts will a case end up in court at all. Any civil suit grows out of the failure to conciliate and is more closely related to the scope of the investigation than the words of the charge. Thus, courts properly limit the permissible scope of judicial proceedings to the scope of the EEOC investigation. See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970). If courts, however, were to ignore this limitation the primary emphasis of Title VII and the ADEA upon voluntary settlement without litigation would be nullified because litigation could commence concerning issues that were never the subject of EEOC conciliation efforts. Id. at 467. Accordingly, this court will closely scrutinize the nature of any civil suit before allowing it to proceed to ensure that it asserts a cause of action within the scope of and closely related to the EEOC charges and investigation.
 
 
 13
 We believe plaintiff's claim of constructive discharge would not have been within the scope of an EEOC investigation concerning plaintiff's discriminatory demotion claim. First, plaintiff's EEOC charge focused entirely upon his December 11, 1986 demotion. Plaintiff's EEOC charge mentions his demotion numerous times. Only in specifying the reasons why plaintiff believed his demotion to be discriminatorily motivated did plaintiff allege a change in his performance goals and the redistricting of his sales territory. Recitation of incidents as historical background is not alone sufficient to broaden a charge of discriminatory demotion to include discharge. See Vinson, 806 F.2d at 688.
 
 
 14
 Second, the scope of the EEOC's investigation would not include discovery of plaintiff's discharge. Simply because the constructive discharge allegedly occurred during the period of EEOC jurisdiction over the claim, is no reason to assume the agency would discover this charge. The administrative agency had no way of knowing of such a claim because the alleged discharge had not yet occurred and the agency would not be looking for or investigating discharge-related matters. Other courts have rejected attempts to broaden an investigation specifically concerning demotion into an inquiry into constructive discharge. See, e.g., Evans v. American Nurses Ass'n, 657 F.Supp. 1277, 1279 (W.D.Mo.1987); Pilski v. Prentice-Hall, Inc., 41 Fair Emp.Prac.Cas. (BNA) 1204, 1205 (D.Md.1985). Cf. McGee v. Grand Rapids Press, 486 F.Supp. 584, 589 (W.D.Mich.1980), aff'd mem., 663 F.2d 1072 (6th Cir.1981) (EEOC charge of discriminatory layoff does not include claims of discrimination in hiring or promotion).
 
 
 15
 Plaintiff did not allege a pattern of discrimination which might have included his constructive discharge claim within its scope. See Limongelli v. Postmaster Gen'l, 707 F.2d 368, 373 (9th Cir.1983). Nor is this a case where the plaintiff was erroneously required to demonstrate that "every particular fact alleged in the judicial complaint must have a direct counterpart in the charge of discrimination." Sanchez, 431 F.2d at 465. Plaintiff here simply failed to identify sufficiently the discriminatory conduct that he believed amounted to a constructive discharge.
 
 
 16
 At bottom, a demotion and the facts surrounding it are distinct from a constructive discharge and the circumstances supporting it. A constructive discharge requires an inquiry not only into the employer's conduct but also its effect on the employee and other reasons for the employee's actions. Absent a specific amendment of the charge to include a constructive discharge claim, or extensive factual allegations concerning intolerable working conditions which clearly point to the unnamed legal conclusion that a constructive discharge has occurred, or evidence as to the actual scope of the EEOC investigation or the subject of conciliation attempts, we find a claim of constructive discharge to be outside the scope of an EEOC charge concerning discriminatory demotion. Thus, the District Court was without jurisdiction.
 
 
 17
 Finally, the District Court did not err in dismissing appellant's pendent claims. Pendent jurisdiction is a doctrine of discretion, and considerations of comity give a District Court compelling reasons to decline jurisdiction where, as here, "the federal claims are dismissed before trial." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). See also Carnegie-Mellon Univ. v. Cohill, 108 S.Ct. 614, 619 (1988) (elimination of sole federal claim gave district court a "powerful reason to choose not to continue to exercise jurisdiction"); Biechele v. Cedar Point, Inc., 747 F.2d 209, 216-17 (6th Cir.1984) ("[i]t is not an abuse of discretion for a district court to dismiss pendent state claims after resolving all issues raised in the primary federal question claims").
 
 
 18
 For the foregoing reasons, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The parties dispute whether plaintiff's reassignment from DME to DMS constituted a demotion. For purposes of this appeal we will assume, as did the District Court, that the reassignment was in fact an undesirable demotion