876 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Doris LEIGH, Plaintiff,
Brenda Wilkins, Plaintiff-Appellant,
v.
BUREAU OF STATE LOTTERY; Michael J. Carr; Libby Ballard;
Bruce McComb, Defendants-Appellees,
William M. Nugent, Defendant.
 No. 88-1802.
 United States Court of Appeals, Sixth Circuit.
 June 13, 1989.
 
 Before BOYCE F. MARTIN and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Brenda Wilkins appeals from the district court's order granting summary judgment for defendants Bureau of State Lottery, Michael Carr, Libby Ballard, and Bruce McComb, in this employment discrimination case.[1] For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Brenda Wilkins is a black woman who was hired by the Michigan State Lottery on June 3, 1984 as a College Trainee IV. Prior to accepting this offer of employment, appellant had worked for the Department of Social Services, voluntarily leaving that job due to "job burnout."
 
 
 3
 College Trainee IV's are eligible for reallocation to Promotional Agent V, district manager, when they are satisfactorily performing their jobs and they have spent a minimum of 12 months at their present job level. This 12 month minimum is mandatory unless the employee "receives credit for directly related education or experience gained previously." The State Lottery also has authority to hire candidates directly into the Promotional Agent V level from the list of qualified applicants compiled by the Commission. The State Lottery does not review the qualifications of any candidates; it merely relies on the Civil Service Commission's certification that all candidates on each level's list are qualified.
 
 
 4
 In February, 1984, four months before plaintiff was hired, the state lottery hired three black women and one white woman as Promotional Agent V's. Two months later, the Commission discovered that none of these women met the qualifications necessary for employment as district managers. The Commission determined that these four women should retain their classification as Promotional Agent V's because: they detrimentally relied on the offers of employment; the State Lottery relied on the inaccurate list in making its employment decision; and all four employees were satisfactorily performing their jobs.
 
 
 5
 Several months after she was hired, appellant learned that these unqualified women had been hired as Promotional Agent V's. Appellant requested reallocation with retroactive pay, but the State Lottery denied the request because she did not meet the minimum requirements for reallocation.
 
 
 6
 On August 8, 1985, appellant filed a complaint with the EEOC. This complaint alleged race discrimination only. Appellant notified the EEOC that Leslie Ward (one of the four women mistakenly hired as Promotional Agent V's) was being compensated at an hourly rate higher than the rate she was receiving. On May 21, 1986, appellant filed a second complaint with the EEOC alleging retaliation for having filed the first complaint. The EEOC issued a Notice of Right to Sue on May 8, 1987.
 
 
 7
 Initially, appellant brought this action pursuant to Title VII and 42 U.S.C. Secs. 1981, 1983 and 1985 and the Equal Pay Act, 29 U.S.C. Sec. 206. All claims except those under Title VII were withdrawn. The first amended complaint stated generally that appellant was more qualified than white employees, that white employees received preferential treatment, that one of the defendants had explicitly stated that district manager "was not a woman's job," and that the State Lottery was engaging in retaliatory discrimination.
 
 
 8
 On February 3, 1988, a Joint Final Pretrial Order was entered which set forth the issues to be tried. While the order listed the issues surrounding the plaintiff's sex and race discrimination claims, it made no mention of the retaliation claim.
 
 
 9
 The district court granted summary judgment for defendant and held that Wilkins's allegations of sex-based discrimination constituted an impermissible enlargement of the EEOC complaint and that she failed to establish a prima facie case of race discrimination because she could not prove that she was qualified for the Promotional Agent V position. The district court did not address the retaliation claim.
 
 
 10
 Appellant timely appeals and argues (a) that the lower court erred in dismissing her claim of sex-based discrimination; (b) that the court erroneously granted summary judgment because there are genuine issue of fact in dispute; and (c) that the district court erred in failing to consider her retaliation claim.
 
 II.
 
 11
 The district court held that appellant could not assert any claims of sex-based discrimination because her EEOC complaint alleged only race discrimination.[2] Wilkins attempts to expand the original EEOC charge into a race and sex discrimination Title VII case. This court has stated that "[t]he rule in this circuit is that the complaint and the judicial proceedings [in Title VII cases] are limited not to the words of the EEOC charge but to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Farmer v. ARA Services, Inc., 660 F.2d 1096, 1105 (6th Cir.1981). Claims that are not within the scope of the EEOC investigation must be dismissed for lack of subject matter jurisdiction. EEOC v. Bailey Co., Inc., 563 F.2d 439, 446 (6th Cir.1977), cert. den., 435 U.S. 915 (1978).
 
 
 12
 Several policy considerations support the rule that a Title VII discrimination complaint is limited to the reasonable scope of the EEOC investigation. First, courts should not restrict subsequent Title VII complaints based on procedural technicalities or the failure of EEOC charges to contain the exact wording necessary because these charges are usually filed by lay complainants unfamiliar with the niceties of pleading. EEOC v. Bailey Co., Inc., 563 F.2d 439, 446 (6th Cir.1977). Second, the statutory scheme of Title VII indicates that Congress intended the EEOC to investigate fully allegations of discrimination before such allegations become the basis of a Title VII suit. Id. at 447 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.1970)). Third, Congress "intended that conciliation be the preferred method for eradicating employment discrimination ...," and focused conciliation efforts can occur only if the EEOC is aware of the specific discriminatory employment practice. Id. at 449. Fourth, concerns of due process require that employers receive timely notice and opportunity to comment before institution of a suit. Id. at 450.
 
 
 13
 Wilkins argues that the EEOC would have investigated the possibility of sex discrimination in the course of investigating race discrimination because the two are so closely related factually. This court expressly rejected this theory in EEOC v. Bailey Co., Inc., 563 F.2d 439 (6th Cir.1977). Bailey involved a Title VII action in which the EEOC expanded the original charge of sex discrimination and an amended charge of race discrimination to include religious discrimination. The court ruled that the EEOC could not add the claim of religious discrimination to the complaint even though the EEOC discovered this discrimination in the course of investigating the plaintiff's charges. Id. at 446. Finally, the court stated that "forms of employment discrimination involving race, religion, sex, and national origin ..." are not so related that an EEOC investigation of one can reasonably be expected to grow into an investigation of a different form of discrimination. Id. at 451. However, in recognition of the policy requiring that courts give lay complainants the benefit of the doubt, EEOC charges must be liberally construed to determine whether the plaintiff's charge was merely inartful or whether there was information given in the charge that reasonably should have prompted an EEOC investigation of the separate type of discrimination. Id. at 447.
 
 
 14
 The EEOC charge of discrimination filed by appellant alleges only race discrimination, and it cannot be construed as involving sex-based discrimination even under the most solicitous interpretation of the language. Appellant checked the box for race as "cause of discrimination"; she explicitly alleged racial discrimination; she stated that a white female was paid more; and she gave no examples of disparate treatment involving males, either white or black. Finally, she stated "therefore, I can only conclude that I was denied wages because of my race, black."
 
 
 15
 Accordingly, we hold that the addition of sex-based discrimination to the complaint is an impermissible expansion of the EEOC charge, and that the court below properly dismissed these charges as it lacked subject matter jurisdiction. Even a balancing of the equities involved, realizing that appellant will be barred from seeking redress for discrimination which may be supported by direct evidence, cannot overcome the fact that there is not even a minimal allegation in the charge that would make an EEOC investigation of sex discrimination reasonable.
 
 III.
 
 16
 Appellant argues that the district court erroneously granted summary judgment because there are genuine issues of material fact in dispute. Appellant contends that she was qualified for classification at the Promotional Agent V level when hired and that she was qualified for reallocation to Promotional Agent V during the first year of her employment. She argues that the hiring of a less qualified white female and the reallocation of two similarly situated white males create at least the inference of race discrimination.
 
 
 17
 Appellant's argument on appeal is that the district court's basis for granting summary judgment--that appellant failed to establish a prima facie case--cannot be supported because her prima facie case clearly is established by the evidence. She asserts that the district court's reasoning is relevant only to the defendant's rebuttal case or to the plaintiff's showing of pretext. The district court ruled that the plaintiff failed to establish a prima facie case because she did not prove she was qualified for the position of Promotional Agent V. In holding that Wilkins could not establish her discrimination claim, the district court noted that the uncontradicted facts showed that the hiring of Leslie Ward, an unqualified White woman, as a Promotional Agent V was merely a mistake and was not motivated by discriminatory intent and that the reallocation of certain white employees did not support an inference of discrimination because those employees had prior experience or education in marketing which Wilkins did not have.
 
 
 18
 The general standard an appellate court applies in reviewing a grant of summary judgment is the same as the district court employs initially under Federal Rule of Civil Procedure 56(c). '[T]he burden on the moving party may be discharged by "showing"--that is, pointing out to the District Court--that there is an absence of evidence to support the nonmoving party's case.' 'Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate.' Where it is clear there is no genuine issue of material fact, a court may properly grant summary judgment on a ground other than that assigned in the motion. Additionally, '[a]n appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous basis relied on by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory.'
 
 
 19
 Hines v. Joy Manufacturing Co., 850 F.2d 1146, 1149-50 (6th Cir.1988).
 
 
 20
 The Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), developed the requirements of a prima facie case of discrimination. The Title VII plaintiff must show (1) that she belongs to a protected class; (2) that she applied and was qualified for an open position; (3) that she was rejected, and (4) that, after this rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. The Court added, however, that, as each case differs factually, this four-part specification of prima facie proof "is not necessarily applicable in every respect to differing factual situations." Id. at 802, n. 13.
 
 
 21
 The court below stated "[t]he Court is of the opinion that Plaintiffs cannot establish a prima facie case of race discrimination because they cannot prove that they were qualified for the positions they applied for or seek through promotion." The district court concluded that appellant failed to produce "evidence to support the second essential element, under the McDonnell Douglas standard, of Plaintiff's claims of discrimination." Wilkins's case is analyzed most clearly by breaking it down into her failure to reallocate claim and her failure to hire claim.
 
 A.
 
 22
 We believe the district court properly determined that the plaintiff failed to present a prima facie case of discrimination with regard to her failure to promote claim. The undisputed evidence reveals that the white employees who were reallocated early were either more qualified or better educated than was appellant. Charles Crotty received a masters degree in marketing. Kenneth McBride had several years work experience in sales, marketing and promotion. Two white females, Janet Batuk and Lorie Ann Powers, were hired as College Trainee IV's and were promoted after one year of service as was appellant. Appellant admits that her resume did not reflect any marketing, sales or promotional experience. Further, nothing in the record indicates that appellant had received any advanced degrees.
 
 
 23
 Appellant argues on appeal that her experience with the Department of Social Services, her related education and her job performance at the Lottery Bureau satisfy the requirements for early reallocation. Nothing in these bare assertions, however, supports plaintiff's contention that the district court erroneously granted summary judgment on this failure to promote claim. The district court found that there was no evidence indicating that the plaintiff "possessed either the requisite experience in sales or marketing or advanced degrees in marketing or sales." Neither the record on appeal nor the Appellant's Brief reveal any evidence that appellant had experience or education in marketing. Appellant thus failed to establish a prima facie case for failure to promote.
 
 B.
 
 24
 The district court also stated that appellant failed to establish a prima facie case of discrimination with regard to her failure to hire claim. The appellant argues that the issue of defendant's mistake and good faith and the evidence rebutting the inference of discrimination should not be pursued at the prima facie stage of a Title VII case.
 
 
 25
 We agree that appellant has failed to establish a prima facie case of race discrimination as to her failure to hire charge. It is undisputed that appellant did not meet the Civil Service Commission's established qualifications for initial classification as a Promotional Agent V. It is also undisputed that the hiring of an unqualified white applicant was the result of an administrative error and was not motivated by racial animus, as three of the four unqualified applicants hired were black. Additionally, even if we accepted appellant's argument that she was "qualified" since other unqualified applicants were hired, the district court's decision can be upheld on the alternative ground that appellee has shown legitimate nondiscriminatory reasons for the failure to promote.
 
 
 26
 Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to rebut by showing a legitimate, nondiscriminatory reason for the employment decision. "To accomplish this, the defendant must clearly set forth, through introduction of admissible evidence, the reasons for plaintiff's rejection." Burdine, 450 U.S. at 255. The record shows that the Bureau of State Lottery's employment action was motivated by a Civil Service Commission administrative error. The white female was hired under the mistaken belief that she met the qualifications for Promotional Agent V. The Commission determined that the unqualified white employee should remain employed as a Promotional Agent V because the Lottery relied on the employment list, the employee detrimentally relied on the employment offer and the employee was performing satisfactorily.
 
 
 27
 When the defendant responds to the plaintiff's prima facie proof, the presumption of discrimination "drops from the case." U.S. Postal Service v. Aikens, 460 U.S. 711, 715 (1983). At this point in the proceeding, the district court is in a position to decide the ultimate factual issue--whether the defendant intentionally discriminated. Id. at 715. The plaintiff must persuade the court that the proffered reason for the employment action is pretext, "that a discriminatory reason more likely motivated the employer ... or that the employer's proffered reason is unworthy of credence." Burdine, 450 U.S. at 256.
 
 
 28
 Appellant made no showing that the "legitimate business reason" proffered by the State Lottery Bureau was pretextual. Appellant admits the decision to hire Leslie Ward was a mistake. She admits the mistake was made by the Civil Service Commission and that the Lottery Bureau had relied on the accuracy of the Commission's employment list. Appellant admits that there was an extensive review by the Civil Service Commission to review her qualification for the position, including a hearing at which appellant was given an opportunity to present her qualifications. Appellant does not introduce any evidence that supports even an inference of bad faith on the part of the Lottery Bureau. In fact, as the district court pointed out, the evidence shows that the mistake "was not motivated by any discriminatory intent because three black women were hired at the same time in the same position in the same mistaken belief that they were qualified for the Promotional Agent V position."
 
 
 29
 Accordingly, we conclude that the appellees were entitled to summary judgment on the discriminatory hiring claim.
 
 IV.
 
 30
 Finally, Wilkins argues that the district court erred in dismissing this case without consideration of her retaliation claim. The district court made no mention of this claim because neither of the parties included either the retaliation claim or any facts relating to retaliation in the Joint Final Pretrial Order. Appellant admits that the Pretrial Order controls the course of the action under Fed.R.Civ.P. 16(e) but contends that the pretrial order should be modified "to prevent manifest injustice." She asks this court to remand this case so that she can present to the trial court a motion to amend the Final Pretrial Order. Appellees counter by arguing that appellant waived her retaliation claim.
 
 
 31
 Fed.R.Civ.P. 16(e) states that pretrial orders "... shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial order shall be modified only to prevent manifest injustice." As this court noted in Ghandi v. City of Detroit, 823 F.2d 959, 963 n. 3 (6th Cir.), cert. denied, 108 S.Ct. 774 (1987), the exception to Fed.R.Civ.P. 16(e)--"to prevent manifest injustice"--must be sought at the trial level. Plaintiff must invoke the exception by submitting a motion to amend the pretrial order or, at the least, advising the district court that she intends to proceed on an alternate theory. Id. Further, "[i]t is axiomatic that an issue not presented to the trial court cannot be raised for the first time on appeal." Union Planters Nat. Bank v. Commercial Credit, 651 F.2d 1174, 1187 (6th Cir.), cert. denied, 454 U.S. 1124 (1981) (failure to include claim in pretrial order constitutes failure to raise issue at trial and precludes raising issue on appeal).
 
 
 32
 Appellant did not submit a motion to amend to the district court, nor did she raise the issue of the omission of the retaliation claim prior to the district court's order. She does not contend that the Final Pretrial Order was deficient in any respect other than the omission of the claim. She does argue, however, that "[t]his claim was omitted from the Final Pretrial Order in this case without plaintiff's knowledge or consent." This argument only highlights the plaintiff's neglect in failing to seek an amendment to the Pretrial Order as soon as the deficiency was discovered. This court would then have authority to review the district court's ruling on the motion for an abuse of discretion. Beissel v. Pittsburgh and Lake Erie R. Co., 801 F.2d 143, 150 (3d Cir.1986), cert. denied, 479 U.S. 1088 (1987).
 
 
 33
 Appellant's failure to advance her retaliation claim in the Final Pretrial Order constitutes waiver of the claim. McKinney v. Galvin, 701 F.2d 584, 585-586 n. 3 (6th Cir.1983). In McKinney, the plaintiff "failed to advance his claims of malicious prosecution in either the joint pretrial statement or the theory of the case." Id. at 585. This court noted that the district court properly considered the claim abandoned under Rule 16.
 
 
 34
 Accordingly, appellant waived her retaliation claim by failing to advance the claim at trial.
 
 V.
 
 35
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Co-plaintiff Doris Leigh is not a party to this appeal
 
 
 [2]
 Wilkins' EEOC charge set forth the following allegations of discrimination:
 I believe that I have been discriminated against because of my race, black, inasmuch as:
 a. On June 1, 1984, I transferred to the Bureau of State Lottery. At that time Ms. Libbie Ballard [sic], Personnel Director, told me that all new hirees and transfers were paid the same, and that I had to take a decrease in wages. However, on February 14, 1985, I discovered that another District Manager, Leslie Ward, white was paid $11.80 per hour whereas, I was paid $9.83 per hour.
 b. Currently after our mutual annual raises, I am being paid $11.80 per hour while Leslie Ward is being paid $13.07 per hour. Therefore, I can only conclude that I was denied wages because of my race, black.