**Isaac R. ULMER, et al., Plaintiff,**

v.

**DANA CORPORATION,
et al., Defendant.**

**No. 3:00 CV 7659.**

United States District Court,
N.D. Ohio,
Western Division.

May 2, 2002.

Bruce Comly French, Lima, OH, pro se.

Margaret J. Lockhart, Cooper & Walinski, Toledo, OH, for defendant.

Renny J. Tyson, Law Office of Renny J. Tyson, Columbus, OH, for plaintiff.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before this Court are Defendants' motion for summary judgment (Doc. No. 28) and Defendants' motion to strike inadmissible evidence (Doc. No. 50). For the following reasons the motion to strike will be denied, and the motion for summary judgment will be granted in part and denied in part.

### I. BACKGROUND

Plaintiff Isaac R. Ulmer, an African American man, began employment as a vacation relief worker with Defendant Dana Corporation ("Dana") in July 1994, and was hired as a full-time machine worker in November 1994. Defendant Al Rohrbacher was Mr. Ulmer's area production supervisor at Dana at all times relevant to this action.

In June 1996, Mr. Ulmer received a one day suspension for a violation of plant rules. This suspension resulted from a verbal altercation between Mr. Ulmer and a co-worker. Dana ultimately concluded that the co-worker instigated the incident, but that both employees acted inappropriately and used racial slurs. In August 1996, Mr. Ulmer filed an administrative charge alleging that the June suspension was based upon his race, but he dropped this charge when he learned that the other employee had also been suspended.

From September to October 1996, Mr. Ulmer was given the opportunity to serve as a temporary supervisor. During this trial period, Defendants assert that Mr Ulmer experienced difficulty motivating employees and had a confrontation with an hourly worker. At the end of the supervisory period, Mr. Rohrbacher allegedly spoke with Mr. Ulmer's supervisors, Wilder Strong and Ike Steinke, regarding Mr. Ulmer's performance. Defendants allege that both supervisors advised Mr. Rohrbacher that they could not recommend Mr. Ulmer as a supervisor because of his poor leadership skills and inability to deal well with people. However, Mr. Strong indicates in his affidavit that he was not Mr. Ulmer's supervisor during Mr. Ulmer's service as a temporary supervisor and thus he could not and did not comment negatively as to Mr. Ulmer's performance as a temporary supervisor. Mr. Strong's affidavit also indicates that he does not recall ever saying anything negative to Mr. Rohrbacher regarding any aspect of Mr. Ulmer's employment and further states that he considered Mr. Ulmer to be "a good and capable employee." Pls.' Mem. Ex. 9 at 2.

In June 1997, Dana promoted one of Mr. Ulmer's coworkers, a Caucasian, to a supervisory position. When the vacancy reopened, Dana promoted another Caucasian hourly worker. Both of these employees allegedly had prior supervisory experience and had performed successfully at Dana as temporary supervisors. Mr. Rohrbacher and other managers considered Mr. Ulmer for the positions, but purportedly selected the other candidates for interviews because of Mr. Ulmer's poor performance as a temporary supervisor.

In November 1997, Mr. Ulmer met with a human resources manager, Joe Murphy, and Mr. Rohrbacher to discuss Mr. Ulmer's continued interest in a supervisory

position. During the meeting, Mr. Ulmer complained that other workers with less seniority were promoted ahead of him. Mr. Murphy encouraged Mr. Ulmer to take certain steps to make himself a more attractive candidate, but according to Defendants, Mr. Ulmer "did not do anything to advance himself as a candidate for a supervisory position," Defs.' Mem. at 6 n. 8, in part because he was reluctant to "give management [his] ideas because ... the company would ... take [the] ideas to make money for itself." *Id.* at 8. Also in November 1997, Mr. Ulmer, along with numerous Caucasian employees, were "written up for producing bad parts." Defs.' Mem. at 7 n. 9.

In January 1998, Mr. Ulmer filed an administrative charge, alleging that he was denied promotion due to his race and was disciplined due to his race and in retaliation for complaining about the racial discrimination against him. In December 1998, Mr. Ulmer filed six grievances alleging various forms of racial and sexual harassment, and he has filed numerous grievances since 1998. Dana allegedly has investigated and responded to each of the grievances, and the union has not pursued any action based on Mr. Ulmer's claims.

In correspondence dated July 25, 2000, Mr. Ulmer received a denial and right to sue letter from the Equal Employment Opportunity Commission ("EEOC").[1] This correspondence relates to the January 1998 charge of discrimination and retaliation.

On October 20, 2000, Mr Ulmer and his wife, Patricia A. Ulmer, filed suit in this Court, pleading five causes of action: (1) racial discrimination in the form of (a) discriminatory failure to promote, (b) retaliation, (c) hostile work environment, and (d) disparate treatment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and OHIO REV.CODE § 4112.02; (2) intentional infliction of emotional distress; (3) breach of Ohio public policy; (4) racial harassment and discrimination tort; and (5) loss of consortium. Plaintiffs seek declaratory and injunctive relief, reimbursement for lost wages, and compensatory and punitive damages.

Mr. Ulmer alleges that throughout the course of his employment, he has been "subjected to racial discrimination and harassment and has received different treatment than Defendant [sic] Caucasian employees." Compl. ¶ 13 at 4. Mr. Ulmer maintains that on four separate occasions in 1997, and on several occasions thereafter, he was denied promotion to shift production supervisor, although he allegedly had seniority and was better qualified for the position than Caucasian employees who on each occasion received the position sought by him. Mr. Ulmer further alleges that in November 1997, after complaining of Dana Corp.'s failure to promote him, he subsequently was disciplined with a write-up for allegedly producing substandard parts. Mr. Ulmer asserts that the alleged differences in treatment with respect to his job, coupled with the disparate treatment of other African American and Hispanic employees, "created a hostile work environment; made Plaintiff's work environment nearly impossible to survive in[;] and has resulted in detriment, distress and illness to Plaintiff as well as to other African American and Hispanic employees."

1. According to Defendants, Mr. Ulmer filed an additional charge of discrimination against Dana in July 1999. Mr. Ulmer received a dismissal and right to sue letter dated July 2000, but has not filed suit based upon the allegations relating to that charge. Plaintiff also filed a discrimination charge against his union in May 2000 and received a dismissal and right to sue letter dated July 18, 2000. Plaintiff has not filed suit against the union.

Defendants have moved for summary judgment and assert, *inter alia:* (1) Mr. Ulmer failed to exhaust his administrative remedies with respect to certain claims; (2) Plaintiffs have failed to establish a prima facie case of discrimination and/or retaliation; (3) Dana has a legitimate and non-discriminatory reason for not promoting Mr. Ulmer; (4) Mr. Rohrbacher is not an "employer" under Title VII and cannot be held individually liable for discrimination; and (5) this Court lacks jurisdiction to hear Plaintiffs' state law claims.

Defendants also move to strike the affidavits of three of Mr. Ulmer's co-workers at Dana, as well as a psychological assessment prepared by Dr. Anthony M. Alfano, Ph.D, a clinical psychologist who has treated Mr. Ulmer on over seventy-five occasions.

## II. DISCUSSION

### A. Motion to Strike

#### 1. Affidavits of Robert Lee Curtis, Jr., Eloise Smith, and James A. Wall, Sr.

█ Federal Rule of Civil Procedure 56(e) sets forth three mandatory requirements for affidavits that are used in support of, or in opposition to, a motion for summary judgment. The rule requires that such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e). " 'An affidavit that does not satisfy the requirements of Rule 56(e) is subject to a motion to strike.' " *Reddy v. Good Samaritan Hosp. & Health Ctr.,* 137 F.Supp.2d 948, 954 (S.D.Ohio 2000) (quoting *Collazos Cruz v. United States,* No. 96–5452, 1997 U.S.App. LEXIS 17196, 1997 WL 377037, at *2 (6th Cir. July 3, 1997)).

Regarding the three contested affidavits, Defendants assert that "many of the state-ments in plaintiff's affidavits do not appear to be based upon personal knowledge" and thus should be stricken from the record. Defendants generally dispute statements regarding (1) "Mr. Rohrbacher's alleged control over hiring and promotions" and (2) the affiant's observation of disparate treatment of African American employees. Defs.' Mot. Strike at 3. However, Defendants fail to point to specific statements or paragraphs in the individual affidavits to which they object. Defendants simply make generalized allegations and leave the Court to divine precisely which statements in which affidavits fall within the parameters of Defendants' generalized allegations. Therefore, the Court cannot, at this juncture in the proceedings, make a well-reasoned determination as to the propriety of striking any portion of any of the affidavits. Moreover, the Court notes that while the affidavits are not preceded or concluded with a statement as to the affiants' personal knowledge of the facts to which they attest, many paragraphs in the affidavits are individually supported by statements such as "I witnessed and experienced," "I am personally aware," "I have personally observed," etc. Accordingly, the Court will deny Defendants' motion to strike the affidavits of Robert Lee Curtis, Eloise Smith, and James Wall.

#### 2. Report of Dr. Anthony M. Alfano, Ph.D.

In response to Defendants' motion for summary judgment, Plaintiffs also submit a "Psychological Assessment Update" dated April 25, 2001, completed by Dr. Alfano. *See* Pls.' Resp. Ex. 13. Defendants object to the entirety of Dr. Alfano's evaluation report, and argue that the report must be stricken in its entirety because it is unsworn, is hearsay in and of itself, and also contains inadmissible hearsay.

■ While it is true that the report is not sworn to, accompanied by affidavit, or otherwise attested to in accordance with 28 U.S.C. § 1746,[2] it is well-established that a party need not "produce evidence in a *form* that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (emphasis added); *see also Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir.1994). Nonetheless, "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley*, 20 F.3d at 226. Unfortunately for Defendants, they do not explain how the entirety of Dr. Alfano's psychological evaluation constitutes hearsay. In addition, as with the contested affidavits, Defendants fail to direct the Court to precisely which individual statements in Dr. Alfano's report they believe constitute inadmissible hearsay. Accordingly, the Court cannot make a well-reasoned determination of what portion, if any, of Dr. Alfano's report should be stricken. The Court will deny Defendants' motion to strike Dr. Alfano's report.

## B. Failure to Exhaust Administrative Remedies

In addition to contesting evidence proffered by Plaintiffs, Defendants assert that Plaintiffs have failed to exhaust their administrative remedies with respect to hostile work environment, disparate treatment, and claims based on incidents occurring after November 1997. Defendants argue that "a broad reading of the [relevant EEOC] charge does not encompass [Mr. Ulmer's] work environment or his job status after November[ ] 1997." Defs.' Reply at 3. Defendants also assert that Plaintiffs cannot maintain any claims

for hostile work environment and disparate treatment because those claims were not raised in the EEOC charge upon which the instant action is predicated.

■ A plaintiff's Title VII claims are limited to "the scope of the EEOC investigation reasonably expected as a result of the discrimination charge filed." *See Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1105 (6th Cir.1981). "Claims that are not within the scope of the EEOC investigation must be dismissed for lack of subject matter jurisdiction." *Leigh v. Bureau of State Lottery*, 876 F.2d 104, 1989 WL 62509, at *2, No. 88–1802, 1989 U.S.App. LEXIS 8525, at *5 (6th Cir. June 13, 1989). However, the allegations in the complaint are not limited to the precise verbiage of the EEOC charge. *See Farmer*, 660 F.2d at 1105 (explaining that "[t]he exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow' "). "[I]n recognition of the policy requiring that courts give lay complainants the benefit of the doubt, EEOC charges must be liberally construed to determine whether the plaintiff's charge was merely inartful or whether there was information given in the charge that reasonably should have prompted an EEOC investigation of the separate type of discrimination." *Leigh*, 1989 WL 62509, at *3, 1989 U.S.App. LEXIS 8525, at *8.

### 1. Hostile work environment

■ In the instant action, the relevant EEOC charge alleges conduct relating to failure to promote and retaliation. However, after reviewing the charge, the Court

---

**2.** 28 U.S.C. § 1746 provides:

Wherever, … under any rule, … any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same, … such matter

may, with like force and effect, be supported, evidenced, established, or proved … by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated. …

finds nothing that would have reasonably given rise to an investigation of a hostile work environment claim. Admittedly, Mr. Ulmer states in his affidavit offered in support of the administrative charge that he was the subject of racial harassment, which might potentially indicate a hostile work environment. However, the affidavit links the alleged harassment to a previously filed administrative charge. This prior charge was based on a single, specific incident, *i.e.*, Mr. Ulmer's one-day suspension resulting from a verbal altercation with a co-worker,[3] and not on the severe or pervasive conduct normally associated with a hostile work environment claim. *See Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999) (discussing the Supreme Court's reaffirmation of the "severe or pervasive" test). In addition, this statement appears to be offered merely as background information, and not asserted as a basis to support a particular claim. *See Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir.1986) (determining that recitation of incidents as historical background is not sufficient to broaden a charge of discrimination).

Importantly, Plaintiffs fail to address Defendants' contentions that the EEOC charge does not encompass this claim and do not direct the Court to any portions of the January 1998 charge or accompanying affidavit to support their position that the hostile work environment and disparate treatment claims are within the "scope of the EEOC investigation reasonably expected as a result of the discrimination charge filed." *Farmer*, 660 F.2d at 1105; *see also Vinson*, 806 F.2d at 688 (explaining that "when jurisdiction is challenged, the burden of establishing jurisdiction lies with the party asserting it"). Furthermore, correspondence dated July 14, 2000

reveals that the scope of the EEOC investigation was limited to whether "the most qualified employees were selected for the position [Mr. Ulmer] applied for" and whether Mr. Ulmer was "retaliated against for complaining about not being selected for a promotion." Defs. Mem. Ex. B. The EEOC also "noted an absence of significant direct evidence of unlawful discrimination." *Id.* Therefore, the Court will grant summary judgment to Defendants on Plaintiffs' Title VII hostile work environment claim. *See, e.g., Cedar v. Premier Indus. Corp.*, 869 F.2d 1489, 1989 WL 20615, at *4, 1989 U.S.App. LEXIS 2268, at *11 (6th Cir. Feb. 28, 1989) ("specific amendment of the charge" to include the disputed claim, "extensive factual allegations" in support of the claim, or "evidence as to the actual scope of the EEOC investigation or the subject of conciliation efforts" were necessary to determine whether constructive discharge was outside scope of EEOC charge).

■ Ohio courts have held that a plaintiff need not exhaust his administrative remedies prior to filing suit for racial discrimination alleged pursuant to Ohio Rev. Code § 4112.02. *See Carney v. Cleveland Heights–Univ. Heights City Sch. Dist.*, 758 N.E.2d 234, 143 Ohio App.3d 415 (Ohio App.2001). Therefore, Defendants are not entitled to summary judgment on the state hostile work environment claim on the basis of Plaintiffs' failure to exhaust.

### 2. Disparate treatment

■ Similarly, with respect to the disparate treatment claim, Plaintiffs fail to direct the Court to any portion of the charge or accompanying affidavit to support their position that such a claim might reasonably grow out of the EEOC charge.

**3.** In the August 1996 charge, Mr. Ulmer asserted that he was disciplined on June 11, 1996 because of his race.

Nonetheless, the Court finds a number of statements that might suggest a disparate treatment claim. Specifically, Mr. Ulmer complains that of fifteen foremen, only one was Black. In addition, Mr. Ulmer recounts several dates where Caucasian instead of African American candidates were selected to fill supervisory positions, even though Mr. Ulmer allegedly was informed that no supervisory positions were available. Finally, Mr. Ulmer concludes his supporting affidavit with the statement that "Curtis has first hand knowledge of how the Respondent treats Black employees differently, and is willing to act as a witness." Defs.' Mem Ex. E. Based upon these allegations, a Title VII disparate treatment claim might be "reasonably expected to grow out of the charge of discrimination." *EEOC v. Bailey*, 563 F.2d 439, 446 (6th Cir.1977). Moreover, as noted above, Plaintiffs' state law claim is not subject to an exhaustion requirement.

### 3. Events subsequent to the time of the administrative charge

■ With respect to the relevant time period for Plaintiffs' discrimination claims, Defendants assert that Plaintiffs' judicial complaint is limited to the time period specifically alleged in the administrative charge, from June 15, 1997 to November 12, 1997. Plaintiffs assert that "the scope of the EEOC investigation reasonable expected to grow out of Ulmer's charge of discrimination may involve claims ... before and even after 1997." Pls.' Resp. at 13.

The Court of Appeals for the Sixth Circuit has held:

> Generally, retaliation claims based on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832–33 (6th Cir.1999). However, retaliation claims based on conduct that occurred before the filing of the EEOC charge must be included in that charge. *See Ang v. Procter & Gamble Co.*, 932 F.2d 540, 547 (6th Cir.1991) ("Retaliatory conduct occurring prior to the filing of the EEOC complaint is distinguishable from conduct occurring afterwards as no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original complaint.").

*Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir.2001).

■ The Plaintiffs are therefore correct that the filing of an EEOC charge is sufficient to allow the Court to exercise jurisdiction over any retaliation that might result from the filing of that particular charge. The Plaintiffs have failed to offer any rationale, however, that might allow any other sort of Title VII claim to be introduced that is based on discrimination that occurred after the period stated in the EEOC complaint; therefore, this Court has no jurisdiction over any Title VII claim raised by the Plaintiff that arose after November 1997, with the exception of claims of retaliation based on the EEOC complaint itself. Of course, as noted above, Plaintiffs' actions based on the Ohio discrimination statute are unaffected by the failure to exhaust administrative remedies.

### C. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.,* 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party." *Williams v. Belknap,* 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.,* 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams,* 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.,* 224 F.3d 537, 539 (6th Cir.2000).

### D. Count I—Racial Discrimination

In this count Plaintiffs allege failure to promote, retaliation, hostile work environment, and disparate treatment based upon Mr. Ulmer's race in violation of Title VII and Ohio Revised Code § 4112.02. Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Under the Ohio code, it is an unlawful discriminatory practice:

> For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges

of employment, or any matter directly or indirectly related to employment. OHIO REV.CODE. § 4112.02(A).

With the exception of the law of supervisory liability, discussed below, Ohio courts analyze state employment discrimination claims pursuant to the framework established for federal employment discrimination claims. *See Myers v. Goodwill Indus. of Akron*, 701 N.E.2d 738, 122 Ohio App.3d 294 (Ohio App.1997) (explaining that "[f]ederal caselaw interpreting Title VII is generally applicable to cases of alleged violations of R.C. Chapter 4112") (citing *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm'n*, 575 N.E.2d 1164, 61 Ohio St.3d 607, 609 (Ohio 1991)).

To prevail in an employment discrimination claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case of discrimination pursuant to the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir.1999) (stating "[i]n the absence of direct evidence of disability discrimination, a plaintiff may seek to establish a prima facie case of discrimination"); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996). In the instant action, Plaintiffs present no direct evidence of discrimination, and Defendants deny any discriminatory conduct with respect to the terms and conditions of Mr. Ulmer's employment. Accordingly, the analysis proceeds pursuant to the *McDonnell Douglas* paradigm.

To establish a prima facie case of discrimination under Title VII, a plaintiff generally must show, by a preponderance of the evidence: (1) membership in the protected class; (2) an adverse employment action; (3) that he was qualified for the position; and (4) that he "was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 728–29 (6th Cir.1999). However, the precise elements that a plaintiff must demonstrate to establish his prima facie case of discrimination will vary depending on the nature of the claim.

If a plaintiff succeeds in making out a prima facie case of discrimination, then the defendant must produce a legitimate, non-discriminatory reason for its action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (iterating the Court's "allocation of the burden of production and an order for the presentation of proof in Title VII" discrimination cases). While a "defendant need not persuade the court that it was actually motivated by the proffered reasons," *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), it must nonetheless "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255, 101 S.Ct. 1089.

If the defendant meets this burden of production, then the plaintiff "must persuade the court that the proffered reason for the employment action is pretext." *Leigh*, 1989 WL 62509, at *6, 1989 U.S.App. LEXIS 8525, at *15. One the burden has shifted, the plaintiff is given "a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also St. Mary's*, 509 U.S. at 507–08, 113 S.Ct. 2742. A plaintiff may demonstrate that the defendant's proffered explanation is pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Three ways in which a plain-

tiff can establish that defendant's reasons are not credible are: (1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the employment decision, or (3) if they were factors, by showing that they were jointly insufficient to motivate the employment decision. *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 844 (6th Cir.1996); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir. 1995); *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir.1986). A court "may not, however, focus on the soundness of an employer's business judgment." *Chappell*, 803 F.2d at 266.

### 1. Discrimination claims alleged against Mr. Rohrbacher

■ Title VII does not allow claims against supervisors in their individual capacity. *See Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir.1997). Because Plaintiffs provide no basis for departure from this general principle, the Court will grant summary judgment to Mr. Rohrbacher on Plaintiffs' Title VII claims.

■ Ohio law does permit employment discrimination claims against individual supervisors. *See Genaro v. Cent. Transp., Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). Because Ohio courts apply the Title VII framework to state law employment discrimination claims, the Court's Title VII analysis as utilized with respect to the state law claims is relevant to disposition of these claims against Mr. Rohrbacher.

### 2. Failure to promote

■ To establish a claim for discriminatory failure to promote, Plaintiffs must demonstrate: (1) Mr. Ulmer is a member of a protected class; (2) Mr. Ulmer applied for and was qualified for the position to which he was not promoted; (3) Mr. Ul-

mer was considered for and denied the promotion; and (4) the position ultimately was filled by a similarly qualified candidate from someone outside the protected class. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir.2000).

### a. Promotional opportunities in 1997

In the instant action, Defendants concede that "[i]t is undisputed that plaintiff is in a protected class and had expressed an interest in a production supervisor position prior to 1997." Defs.' Mem. at 11. Defendants also do not contest that the position sought by Mr. Ulmer was ultimately filled by someone outside the protected class.

■ The Defendants do dispute Mr. Ulmer's ability to show that he was qualified for the position that he sought. They argue that he was not qualified "because he failed to perform satisfactorily as a temporary supervisor in 1996." Defs.' Mem. at 11.

To be "qualified" for the position, Mr. Ulmer must demonstrate that he "was meeting [his] employer's legitimate expectations and was performing to [his] employer's satisfaction." *Warfield*, 181 F.3d at 729. Plaintiffs assert that Defendants' assertions regarding his qualifications are "not reasonable in light of the fact that the Defendant had no formal qualification for Production Supervisor during the periods in question." Pls.' Resp at 14. Plaintiffs also assert that Mr. Ulmer "met each of the requirements Defendant testified it used to informally decide who would be interviewed." Pls.' Resp at 16. These factors included prior managerial experience, temporary supervisory experience, a candidates interest in the position, and how department employees responded to the putative supervisor's leadership skills. To demonstrate that Mr. Ulmer met these criteria, Plaintiffs note that Mr. Ulmer

"demonstrated an interest, . . . had worked as a temporary foreman and he had supervisory experience." *Id.* Plaintiffs also assert that Mr. Ulmer had more relevant shop experience than the employees who were promoted.

Beyond a one sentence assertion that Plaintiff performed poorly as a temporary supervisor, Defendants offer no other argument or point to any evidence, or lack thereof, to indicate how Mr. Ulmer cannot demonstrate that he was not qualified. While a plaintiff has the burden of establishing a prima facie case, the moving party on summary judgment must demonstrate to the Court how a plaintiff cannot establish one or more elements of its action. The Defendants have not done so, and the Court must find that Mr. Ulmer has made a prima facie case of discriminatory failure to promote. The burden now shifts to Defendants to articulate a legitimate, non-discriminatory reason for their decision not to promote Mr. Ulmer.

■■ Defendants' burden in this regard is not particularly onerous, but they must "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089. According to Mr. Rohrbacher's deposition testimony, the primary reasons why Mr. Ulmer was not promoted were (1) Mr. Rohrbacher purportedly was informed by Strong and Steinke that Mr. Ulmer performed poorly as a supervisor, *i.e.,* that Mr. Ulmer did not get along well with other employees and had difficulty motivating hourly employees when he was acting as a temporary supervisor, and (2) Mr. Rohrbacher did not know that Mr. Ulmer was still interested in a supervisory position. The Defendants have carried their burden of production.

Because the Defendants have come forward with legitimate, nondiscriminatory reasons for not promoting Mr. Ulmer, Plaintiffs are given the opportunity to demonstrate that the proffered reasons are pretextual.

Mr. Ulmer suggests the pretextual nature of his denial of a promotion due to lack of qualifications is demonstrated by the fact that Mr. Rohrbacher admitted during deposition that he never recommended an African American for promotion to supervisor between 1991 and 1997, despite a large African American presence in the workforce. While this is certainly not definitive evidence of pretext, it is sufficient to allow the Plaintiffs to carry their burden and avoid summary judgment on their failure to promote claims for activity between June 15, 1997 to November 12, 1997

### b. *Promotional opportunities post 1997*

■■ While the Court has determined that Plaintiffs have demonstrated pretext regarding the four promotional opportunities in 1997, Plaintiffs have failed to make a prima facie case regarding failure to promote after November 12, 1997, chiefly because Plaintiffs do not indicate precisely (1) what positions Mr. Ulmer sought, (2) what the qualifications were for these positions, and (3) how Mr. Ulmer met the qualifications for these positions. The record reveals that beginning in 1998 Dana began to formalize its hiring process and began posting open positions. Unlike in 1997, when there apparently were no formal criteria for evaluating candidates and no formal process for posting available supervisor positions, it appears that the formalized process included the posting of positions and a written evaluation and scoring system for candidates. Mr. Ulmer was considered on more than one occasion under the new criteria but apparently was not promoted due to his low scores. Mr. Ulmer does not dispute the scoring system

but rather asserts that he was equally if not more qualified than the candidates ultimately selected. Unfortunately for Mr. Ulmer, his self-serving allegations regarding his qualifications in comparison to the persons ultimately selected for the positions is not sufficient to meet Plaintiffs' burden on summary judgment. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.1996); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584 (6th Cir. 1992).

Summary judgment will be granted in favor of all Defendants' on Mr. Ulmer's claims of discrimination due to failure to promote for all incidents after November 12, 1997.

### 3. Retaliation

■■■■ To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate:

> (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of [the plaintiff's] civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Williams,* 187 F.3d at 568. Plaintiff's retaliation claim fails because they have produced absolutely no evidence to establish a causal link between the filing of an administrative charge of discrimination, and the denial of promotion to supervisor and discipline regarding producing substandard parts.

■■■■ To establish the element of causation in a retaliation claim, a plaintiff "is required to proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997) (quotation omitted). "[A]t the prima facie

stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." *Id.* "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen,* 229 F.3d at 563. However, while temporal proximity "between protected activity and adverse employment action may give rise to an inference of a causal connection ..., temporal proximity alone will not support an inference in the face of compelling evidence that the defendant company encouraged complaints about the relevant grievance." *Fenton v. HiSAN, Inc.,* 174 F.3d 827, 832 (6th Cir. 1999) (quotation omitted); *see also Nguyen,* 229 F.3d at 566 ("temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence") (quotation omitted).

Plaintiffs iterate a number of ways in which they feel that Mr. Ulmer was discriminated against based upon the filing of the administrative charge; however, they fail to establish that these actions were taken as a result of the filing. Plaintiffs argue only through inference that because the protected activity temporally preceded the adverse actions, that it must have caused them. Notably, Plaintiffs assert that Mr. Ulmer was disciplined for producing substandard parts in retaliation for filing an EEOC charge, but evidence, including Plaintiffs' own exhibits, reveals that Caucasian employees also were disciplined during the same period for the same reason.

Plaintiffs also direct the Court to affidavits in which the affiants complain of discriminatory conduct. "Absent some causal connection or link between an employer's discriminatory statements or conduct and a plaintiff-employee, there is no permissible inference that the employer was motivated by discriminatory animus to act against the plaintiff-employee. The mere fact that an employer may have discriminated against other employees, standing alone, is insufficient." *Byrnes v. LCI Communication Holdings*, 672 N.E.2d 145, 149, 77 Ohio St.3d 125, 130 (Ohio 1996). Plaintiffs' arguments are insufficient to establish a case of retaliation. Accordingly, the Court will grant summary judgment to Defendants on both the state and federal retaliation claims.

#### 4. Hostile work environment

To establish a Title VII hostile work environment claim based on race, an employee must demonstrate that: (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his protected status; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, offensive, or hostile work environment; and (5) employer liability, *i.e.*, the employer knew or should have known of the charged harassment and failed to implement prompt and appropriate corrective action. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999). As determined above, the Court is without jurisdiction to hear a hostile work environment claim alleged pursuant to Title VII. The Plaintiffs' claim of creation of a hostile work environment in violation of Ohio law remains.

To determine whether workplace harassment is so severe or pervasive that it constitutes an actionable hostile work environment, the court is required to consider the "totality of the circum-

stances." *Williams*, 187 F.3d at 562. Here Mr. Ulmer has set forth a number of incidents that he claims created the hostile environment, including Dana's failure to promote him or other minority employees, his discipline for creation of scrap parts, and the use of a racial slur by a co-worker. When considered in the totality of the circumstances, however, Mr. Ulmer has failed to offer sufficient evidence to allow a reasonable jury to find that his environment was "severe or pervasive" enough to be actionable. Summary judgment will be granted in favor of the Defendants on the Plaintiffs' claim of unlawful discrimination through the creation of a hostile work environment.

#### 5. Disparate treatment

"[T]he Sixth Circuit has frequently phrased the requirements of a *prima facie* claim of disparate treatment using ... a 'comparable non-protected person was treated better' element as one of the requisites[; therefore], the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992) (citing *Davis v. Monsanto Chemical Co.*, 858 F.2d 345 (6th Cir.1988); *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir.1974)). "In order to prove the second element of the prima facie case, the plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*, 188 F.3d 652, 659 (6th Cir.) (quoting *Mitchell*, 964 F.2d at 583). Precise equivalence between employees is not required. *See Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1115 (6th Cir.1996). However,

[T]o be deemed "similarly-situated", the individuals with whom the plaintiff seeks

to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell,* 964 F.2d at 583. " '[P]roof of a discriminatory motive is critical. However, in some cases it may be inferred from the mere fact of differences in treatment.' " *Maddox v. IRS Data Ctr.,* No. 87–1358, 1988 WL 123731, at *2, 1988 U.S.App. LEXIS 15616, at *6–7 (6th Cir. Nov. 21, 1988) (quoting *Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 92 (6th Cir. 1982)).

In the instant action, Plaintiffs assert that disparate treatment arose when Caucasian employees were not disciplined for producing substandard parts. This evidence is refuted by exhibits demonstrating that Caucasian employees, including one referenced in the EEOC charge, were disciplined with Mr. Ulmer for the same offense in November 1997.

Mr. Ulmer also asserts instances of different treatment regarding shift coverage during breaks, shift preferences, overtime, opportunities for promotion, and discipline. However, the Plaintiffs have failed to produce sufficient evidence to establish that the non-minority employees with whom they compares Mr. Ulmer's treatment were "similarly situated in all respects", or that their conduct was of "comparable seriousness" to the conduct for which he was disciplined.

Because the Plaintiffs have failed to offer any evidence that similarly-situated non-minority employees received more favorable treatment, their claims of disparate treatment, with the exception of the 1997 failure to promote claims, must fail.

### E. Count II—Intentional Infliction of Emotional Distress

██ In Count II of their complaint the Plaintiffs aver that the discriminatory conduct of the Defendants has caused Mr. Ulmer to suffer emotional distress. To sustain a claim of intentional infliction of emotional distress under Ohio law, a plaintiff must prove four elements:

1) that defendants either intended to cause emotional distress or knew or should have known that their actions would result in serious emotional distress to the plaintiff;

2) that defendants' conduct was extreme and outrageous;

3) that defendants' actions were the proximate cause of plaintiff's psychic injury; and

4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Pyle v. Pyle,* 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (1983).

██ Even when the Court accepts as true all of Plaintiffs' assertions concerning the Defendants' conduct, their behavior is not extreme that it would cause an average member of the community to find it to be outrageous. Although this conduct, even when considered cumulatively, may be considered inequitable, it is does not fall outside the bounds of decency. *See Thatcher v. Goodwill Indus. of Akron,* 117 Ohio App.3d 525, 690 N.E.2d 1320 (1997). Accordingly, Defendants are entitled to summary judgment on to Count II.

### F. Counts III and IV—Breach of Ohio Public Policy and Discrimination Tort

The Plaintiffs have offered no argument or evidence in support of their claims in Counts III and IV of their complaint.

Furthermore, they have indicated that they "will not pursue The Ohio Public Policy Tort claims." Pls.' Resp. at 27. Because the Plaintiffs have withdrawn their claims for the torts of racial harassment and discrimination, the Court will grant summary judgment to Defendants on Counts III and IV.

### G. Count V–Loss of Consortium

■■■■■ As a final matter, the Court addresses Count V of the Complaint, in which Mrs. Ulmer alleges that "[a]s a direct and proximate result of Defendants' actions and/or omissions, Plaintiff Isaac R. Ulmer was and remains unable to fulfill his duties to his spouse," Compl. ¶ 38 at 9, and "Patricia A. Ulmer has suffered a loss of consortium." *Id.* ¶ 39 at 9. Ohio law recognizes claims for loss of consortium. *See Clouston v. Remlinger Oldsmobile Cadillac, Inc.*, 22 Ohio St.2d 65, 258 N.E.2d 230 (Ohio 1970). These claims are derivative of, and thus frequently tied to the success of, the underlying claim. *See Urban v. Goodyear Tire & Rubber Co.*, 2000 WL 1800679, at *6 (Ohio App. Dec. 7, 2000) (explaining that "liability elements of a loss of consortium claim are proven when the underlying tort is proven"); *but see Bowen v. Kil–Kare, Inc.*, 585 N.E.2d 384, 391, 63 Ohio St.3d 84 (Ohio 1992) (noting that "a wife's loss of consortium claim is not necessarily defeated by a valid defense to her husband's claim against the tortfeasor").

■■■■ Defendants are entitled to summary judgment on the tort of intentional infliction of emotional distress, and Plaintiffs have withdrawn all other tort claims. Because "a claim for loss of consortium is derivative in that the claim is dependent upon the defendants having committed a legally cognizable tort upon the spouse who suffers bodily injury," *Bowen*, 63 Ohio St.3d at 93, 585 N.E.2d 384, Mrs. Ulmer's claim does not survive.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to strike (Doc. No. 50) will be denied. The motion for summary judgment (Doc. No. 28) will be denied on Count I as to the claim for discriminatory failure to promote between June 15, 1997 to November 12, 1997. The motion for summary judgment will be granted on Count I as to claims for retaliation, hostile work environment, disparate treatment, and failure to promote after November 12, 1997. Summary judgment will also be granted in favor of all Defendants on Counts II—V in their entirety.

IT IS SO ORDERED.