Rhonda B. HANDS, Plaintiff,

v.

DAIMLERCHRYSLER CORPORATION, et al., Defendant.

No. 3:01 CV 7106.

United States District Court,
N.D. Ohio,
Western Division.

Sept. 11, 2003.

As Amended Oct. 27, 2003.

Gerald A. Baker, Baker & Associates, Toledo, OH, Marc B. Minor, Ransier & Ransier, Columbus, OH, Dawna F. Scott, Lake Oswego, OR, for Plaintiff.

John T. Landwehr, Eastman & Smith, Carrie L. Sponseller, Eastman & Smith, Joan Torzewski, Lackey Nusbaum Harris Reny & Torzewski, Toledo, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

Pending before the Court are Defendant Union's Motion for Summary Judgment (Doc. No. 33) and Defendant Daimler-Chrysler Corporation's Motion for Summary Judgment (Doc. No. 34). For the following reasons, the Court will grant Defendants' motions.

## I. BACKGROUND

Plaintiff Rhonda Hands began employment with Defendant DaimlerChrysler Corporation ("DaimlerChrysler" or "Company") (f/k/a "Chrysler Corporation") in February 1985 as a utility worker. Throughout her employment Plaintiff was a member of the production bargaining unit and a member of the Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 12 ("Union"). In 1999 and 2000, the periods mainly relevant to this case, Plaintiff performed a right-hand drive assembly job, but requested several transfers to various clerical positions. Each of these requests was denied. Plaintiff filed grievances about the denied transfers, which the Union determined not to process purportedly on the basis that Plaintiff was not contractually entitled to the positions for which she applied.

In 1996 the Union notified employees that apprenticeship programs were to become available at DaimlerChrysler, and Plaintiff indicated that she wanted to be considered for various programs. After completion of a preparatory program, Plaintiff took a written examination and was placed on a wait list with other qualifying candidates. After the exam, Plaintiff spoke to Union and Company officials about improving her assessment. Though encouraged by officials to re-enroll in the preparatory class and re-test, Plaintiff declined to re-sit for the exam.

In December 1999 Plaintiff received correspondence indicating that she remained a candidate on the apprenticeship wait list. The correspondence requested documentation of further education or work experience and informed Plaintiff that she could still retake the qualifying exam. Plaintiff

returned the letter and indicated that she wished to remain on the wait list but she did not retake the exam. That same month, Plaintiff attended a Rainbow Coalition meeting, after which she met with Greg Purtell from the Company's diversity department. At that meeting, Plaintiff discussed her concerns about discrimination in the apprenticeship and clerical programs.

In February 2000, the company eliminated the right-hand drive assembly position. After the position was eliminated, Plaintiff apparently was selected to remain in the same department as a utility worker, but elected not to do so. Instead, Plaintiff successfully bid on a windshield assembly position.

On February 17, 2000 Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation. After receiving a right to sue letter, Plaintiff timely filed the instant Complaint based on the elimination of her position and the denial of her transfer requests. Plaintiffs claims include race discrimination and disparate impact under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as under Ohio law, and retaliation under Title VII. Plaintiff further asserts a hybrid claim against both Defendants under § 301of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Defendants have moved for summary judgment as to all claims.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is enti-
tled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. GMC,* 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted ... to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

### B. Title VII

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail in an employment discrimination claim brought pursuant to Title VII, a plaintiff must either provide direct evidence of discrimination, or establish a *prima facie* case pursuant to the burden shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002).

If a plaintiff succeeds in making out a prima facie case of discrimination, then the defendant must produce a legitimate, nondiscriminatory reason for its action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (iterating the Court's "allocation of the burden of production and an order for the presentation of proof in Title VII" discrimination cases). While a "defendant need not persuade the court that it was actually motivated by the proffered reasons," *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), it must nonetheless "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255, 101 S.Ct. 1089.

If the defendant meets this burden of production, then the plaintiff "must persuade the court that the proffered reason for the employment action is pretext." *Leigh v. Bureau of State Lottery*, 1989 WL 62509, **5–6, 1989 U.S.App. LEXIS 8525, at *15. Once the burden has shifted, the plaintiff is given "a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also St. Mary's*, 509 U.S. at 507–08, 113 S.Ct. 2742. A plaintiff may demonstrate that the defendant's proffered explanation is pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089.

#### 1. Count I—Race discrimination

Plaintiff alleges that she was discriminated against based on race when she was denied a clerical position in January 2000

and again in February 10, 2000. Hands presents no direct evidence of discrimination; therefore, the analysis proceeds under the *McDonnell Douglas* paradigm.

To establish a *prima facie* case of discrimination under Title VII, Hands must show, by a preponderance of the evidence: (1) membership in a protected class; (2) an adverse employment action; (3) that she was qualified for the position; and (4) that she "was replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Warfield v. Lebanon Corr. Inst.,* 181 F.3d 723, 728–29 (6th Cir. 1999).

■ Factor one is not disputed, but Daimler Chrysler asserts that Plaintiff cannot establish the remaining elements of her prima facie case. The Court notes that Defendants' arguments largely improperly conflate the prima facie analysis with the "business justification" and pretext analysis, and thus are not properly considered at this stage of the inquiry. *See Cline v. Catholic Diocese,* 206 F.3d 651, 660–61 (6th Cir.2000) ("when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff"). However, even assuming that Plaintiff can establish a prima facie case of race discrimination, Defendant has proffered legitimate business reasons for not transferring Plaintiff to a clerical position.

■ It is undisputed that the clerical positions for which Hands applied were governed by a separate collective bargaining agreement, the Office and Clerical, Technical and Engineering Supplement. Members of the clerical unit, to which Hands did not belong, acquire seniority separately from production employees such as Hands. Under the supplement, the Company could not fill open clerical positions with an applicant from a separate bargaining unit if there were available laid off employees from the Office and Clerical, Technical and Engineering unit. With respect to the positions for which Hands applied in which production unit employees were considered, the positions went to production employees with more seniority than Hands.

Plaintiff offers no argument or evidence to rebut these proffered justifications, instead focusing her response on the other counts in the Complaint. Upon review of the record, the Court finds no evidence rebutting Defendant's proffered justifications as to why it did not transfer Plaintiff to a clerical position and thus will grant summary judgment to Defendant on the race discrimination claim in Count I.

### 2. *Count I—Disparate impact*

Plaintiff alleges that the apprenticeship examination as administered disparately impacts African–American employees. Plaintiff also asserts that the job bank used for clerical positions similarly disparately impacts African Americans. "The plaintiff's burden in a Title VII disparate impact case is to prove that a particular employment practice has caused a significant adverse effect on a protected group." *Alexander v. Local 496, Laborers' Int'l Union,* 177 F.3d 394, 405 (6th Cir.1999). "As a general matter, a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack. Such a showing is an integral part of the plaintiff's prima facie case in a disparate-impact suit under Title VII." *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). "[A] Title VII plaintiff does not make out a case of disparate impact simply by showing that, 'at the bottom

line,' there is racial imbalance in the work force." *Id.* at 656, 109 S.Ct. 2115. Instead, "[t]he plaintiff must ... identify[ ] and challeng[e] a specific employment practice, and then show an 'adverse effect' by offering statistical evidence 'of a kind or degree sufficient to show that the practice in question has caused the' adverse effect in question." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 830 (6th Cir.2000). "Once the plaintiff establishes the adverse effect, the burden shifts to the employer to produce evidence that the challenged practice is a business necessity." *Alexander*, 177 F.3d at 405–06.

Plaintiff on the one hand concedes that she does not have sufficient evidence to sustain her opposition to summary judgment on this claim. See Pl.'s Resp. at 3, 5. In this regard, Plaintiff directs the Court to her motion for continuance, which the Court has already denied, to allow for more discovery. Plaintiff still submits that she has not conducted sufficient discovery, and proffers this as a justification for her lack of evidence to rebut Defendants' motions. For the following reasons, Plaintiff's argument is not well taken. The motion for continuance was filed on March 7, 2003, two years to the day after the filing of the complaint. After settlement discussions and deadline extensions, discovery closed on November 29, 2002. Defendants filed their respective motions on December 23, 2002. After two extension requests, the Court moved Plaintiffs response deadline to February 25, 2003. The response was not filed until March 7, 2003, and Plaintiff only then simultaneously filed the motion for continuance to allow for further discovery. Despite certain difficulties of which the Court was made aware and considered, it is clear from the foregoing timeline that if Plaintiff has not engaged in discovery sufficient to withstand summary judgment, it is not because the Court has not afforded her ample opportunity to do so.

Plaintiff alternatively submits that:

Considering the comprehensive point assessment tallying system, the criteria for further accumulation of qualifying points and even test scores of overall point assessment were never made available to Hands, or to Hands' knowledge, to any other African–American who took the test, combined with the undisputed fact that of those admitted to the Skilled Trades Apprenticeship Program, all but 1 employee was White, and *no* African–American was ever admitted during the entire 18 years Hands was employed at the Company, Hands has made a *prima facie* showing that the apprenticeship testing process as administered by the Company and the Union disparately impacts African–Americans.

Pl.'s Resp. at 4.

■ Notwithstanding the fact that these allegations are supported in part by Hand's affidavit that is contradicted in part by her earlier deposition testimony, the foregoing is insufficient to establish that the testing program caused any racial disparity. Plaintiff apparently presumes that merely because she has provided some evidence of disparity, she survives summary judgment. However, as Plaintiff does not present any evidence, particularly the required statistical evidence, to demonstrate that the disparity complained of is the result of one or more of the contested employment practices, this claim must fail.

■ As to the disparate impact of the clerical job bank, the only evidence proffered by Plaintiff is the affidavit of an African–American co-worker asserting that the daughter of a white Union official was treated more favorably than this coworker. Plaintiff asserts that with "further probing, it is likely that Hands could

obtain ... evidence that either the Union or the Company or both routinely allowed relatives of management into the Job Bank, even above other workers like Hands who were just as qualified or who had more seniority." Pl.'s Resp. at 5–6. As to this assertion, a co-worker's legal conclusion in an affidavit that she was treated less favorably is insufficient to establish disparate impact. As to the allegations of family preferences, Plaintiff does not direct to the Court to any authority establishing that Title VII make nepotism actionable.

Plaintiff further asserts that Defendants have not offered documentation that disproves her allegations. However, it is not Defendants' burden to disprove Plaintiff's case. Instead, Plaintiff maintains the burden of directing the Court to evidence to counter the deficiencies alleged by Defendants in their motions.

### 3. Count III—Retaliation

Plaintiff alleges that her right-hand assembly position was eliminated after she participated in a Rainbow Coalition meeting in December 1999. Subsequent to this meeting, Plaintiff met with management to discuss her concerns regarding perceived discrimination in the apprenticeship and clerical programs, and asserts that her position was thereafter eliminated due to her complaint.

To prevail on Count III, Plaintiff must first establish a prima facie case of discrimination through retaliation by demonstrating:

(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir.2000).

 DaimlerChrysler appears to challenge only the final prong of this test, asserting that its decision to eliminate the position was not related to the complaint but rather was due to a reduction in demand for right hand drive vehicles. Defendant further notes that Caucasian employees were affected as well by the decision to eliminate the position. Based on the foregoing, Defendant argues that Plaintiff cannot establish a causal connection between her complaint and the elimination of the right-hand drive assembler position.

Plaintiff's evidence in this regard is her transfer to the second shift and the alleged increased scrutiny by her supervisor one month after the Rainbow coalition meeting,[1] coupled with the elimination of her position just two months after her meeting with Purtell. Plaintiff cites to *Ford v. GMC,* 305 F.3d 545 (6th Cir.2002) to support her position that the foregoing is sufficient to establish causation. However, in *Ford,* the supervisor had done nothing to diffuse racial tensions, the Plaintiff's workload was increased, he was subjected to heightened scrutiny, and he was threatened with termination. *Ford,* 305 F.3d at 555. After review of the record, the Court finds Plaintiff's evidence insufficient to establish causation.

### C. Count II—Ohio Law Claims

In addition to her Title VII claims, Plaintiff also alleges race discrimination

---

**1.** As to the increased supervision, Plaintiff asserts that her supervisor "watched [her] on the job very closely," Pl.'s aff. at 4.

and retaliation pursuant to Ohio law. Under the Ohio Code, it is an unlawful discriminatory practice:

> For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

OHIO REV.CODE. § 4112.02(A).

 With the exception of the law of supervisory liability, Ohio courts analyze state employment discrimination claims pursuant to the framework established for federal employment discrimination claims. *See Myers v. Goodwill Indus. of Akron*, 701 N.E.2d 738, 122 Ohio App.3d 294 (Ohio App.1997) (explaining that "[f]ederal case-law interpreting Title VII is generally applicable to cases of alleged violations of R.C. Chapter 4112") (citing *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm'n*, 575 N.E.2d 1164, 61 Ohio St.3d 607, 609 (Ohio 1991)). Accordingly, Plaintiff's Ohio law claims fail for the same reasons as her Title VII claims.

### D. Count IV—LMRA § 301

In relation to both the apprenticeship program and the clerical job bank, Plaintiff has asserted a claim against Daimler-Chrysler for breach of the collective bargaining agreement ("CBA") and against the Union for breach of the duty of fair representation.[2] She also asserts that DaimlerChrysler breached the CBA by not transferring her to a clerical position. Plaintiff asserts that the Union breached its duty by not processing through to arbitration her grievance about the clerical job and her request to be admitted to the apprenticeship program.[3]

### 1. Union

Defendants raise numerous reasons as to why Plaintiff's § 301 claims fails. The Union first submits that the claims predicated both on the apprenticeship program and the clerical transfer are barred by the six month statute of limitations borrowed from § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). The Union further argues that Plaintiff has failed to exhaust her administrative remedies, and also raises numerous substantive challenges to the Complaint.

 Section 10(b) of the NLRA provides in relevant part "that no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). This statute of limitations is borrowed from and applies to breach of collective bargaining agreement claims against employers as well as fair representation claims against unions. *See DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *see also Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir.2001). To determine when a cause of action accrues, the court is to look at " 'when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action.' " *Martin*, 269 F.3d at 678–79 (quoting *Wilson v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 83 F.3d 747, 757 (6th Cir.1996)).

---

**2.** The CBA is asserted to provide that employees shall not be discriminated against and shall have equal opportunity for jobs without regard to, *inter alia,* race.

**3.** The Court notes that while Plaintiff asserts that she filed a grievance regarding the clerical transfer, she does not allege that she filed a grievance with the Union as to the apprenticeship program.

■ Defendant argues that as to the grievance concerning the clerical claim, Plaintiff was notified "more than one hundred and eighty days before the Amended Complaint was filed" that the Union was not going to process her claim. Union's Mem. at 6. In support of this contention, the Union directs the Court to the affidavit of Mark Garrett, the Union chairperson for the Office and Clerical, Technical and Engineering Unit employees. Garrett attests that Plaintiff "was told that the Union was not processing her grievances promptly after the decision was made, that was well before May 30, 2001."

Plaintiff was denied a clerical position on February 10, 2000 and subsequently filed a grievance protesting that denial. Plaintiff filed her original Complaint on March 7, 2001. With leave of Court, an amended complaint was filed on March 6, 2002, adding the Union as a defendant and adding the § 301 claims against both Defendants. Garrett's affidavit reflects only that Plaintiff was informed of the Unions decision "well before May 30, 2001." The notification date provided in Garrett's affidavit, which postdates the filing of the original Complaint by nearly three months, might be sufficient if the operative date were the filing date of the amended complaint, March 6, 2002. What Defendant's argument fails to take into account is the likelihood that the amended complaint relates back to the filing date of the amended complaint. Under this scenario, Garrett's affidavit is insufficient to establish that the clerical transfer claims are untimely.

As to the apprenticeship program claims, Plaintiff alleges only that she requested consideration for admission to the program. The last time she had requested consideration for the program was in 1999. There is no allegation or evidence of any later filed grievance and action thereon by the Union that might fall within the six month limitations period, thus the Court is left to query when precisely in the chain of events Plaintiff's claim might have accrued. Defendant argues that the last date Plaintiff requested consideration is the appropriate date, and Plaintiff does not counter this suggestion. In using this date, even by reference to the filing date of the original complaint, Plaintiff's claim is not timely. However, Defendant has not persuaded the Court that some unspecified date in 1999 is the appropriate accrual date for Plaintiff's claim.

■ The Union also asserts that Plaintiff failed to avail herself of administrative remedies prior to filing suit. Although exhaustion of administrative remedies in § 301 claims against employers is excused in few circumstances, see Wilson v. Int'l Bhd. of Teamsters, 83 F.3d 747, 753 (6th Cir.1996) (requiring "a 'clear and positive showing' that pursuit of grievance procedures would be futile before allowing access to federal courts on Section 301 claims"), exhaustion of administrative remedies, specifically internal union procedures, is not necessarily a prerequisite to filing suit against a Union for breach of the duty of fair representation. See Clayton v. Intern. Union, United Auto. Workers, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In Clayton, the Court instructed:

[C]ourts have discretion to decide whether to require exhaustion of internal union procedures. In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay

the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Id.* at 689, 101 S.Ct. 2088.

Because neither party has directed the Court to information sufficient to make a determination on these factors, the Court declines to enter summary judgment predicated on failure to exhaust. As to the substantive arguments raised by the Union, Plaintiff has offered little in the way of opposition; those claims are disposed of as set forth below.

### 2. DaimlerChrysler

 DaimlerChrysler has not raised the statute of limitations or exhaustion issue, instead attacking the merits of the § 301 claim. In response, Plaintiff asserts:

> Admittedly, Hands has very little evidence to present on the hybrid § 301 claim . . . [.] Hands has not received any documents, including the collective bargaining agreement, to begin to assess this issue. Once again, further discovery must be conducted and more affidavit need to be obtained before Hands can justify her opposition to summary judgment being entered in defendants' favor on this claim.

> Nevertheless, Hands has offered evidence in the form of sworn affidavits from several of her co-workers which raises genuine issues of material fact on this claims. For that reason alone, the Court should not enter summary judgment in favor of the defendants.

Pl.'s Resp. at 10–11.

The above passage constitutes the entirety of Plaintiff's argument in opposition to Defendants' motions for summary judgment. As previously noted, Plaintiff has been afforded an ample period for discovery. Plaintiff has not notified the Court of any documents that have been requested by Plaintiff and not produced in response to a proper discovery request, nor has Plaintiff advised the Court of any other type of discovery dispute. As to the referenced affidavits, the Court finds the contents largely irrelevant and wholly insufficient on which to predicate the sole basis for maintaining a breach claim against either DaimlerChrysler or the Union.

### III. CONCLUSION

Based on the foregoing, the Court will grant Defendant Union's Motion for Summary Judgment (Doc. No. 33) and Defendant DaimlerChrysler Corporation's Motion for Summary Judgment (Doc. No. 34). Case closed.

IT IS SO ORDERED.